UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

VANCE C. HODGE, Trustee of the )
Vance C. Hodge Revocable Trust, )
et al., )
 )
            Plaintiffs, )
 )
     v. ) No. 4:10CV1432 FRB
 )
TOP ROCK HOLDINGS, INC., et al., )
 )
           Defendants. )

**MEMORANDUM AND ORDER**

        Presently pending before the Court is defendants' Joint Motion to Dismiss and Compel Arbitration (Doc. #10). All matters are pending before the undersigned United States Magistrate Judge, with consent of the parties, pursuant to 28 U.S.C. § 636(c).

        Plaintiffs are Missouri residents who bring this cause of action as owners and/or beneficiaries of partnership interests in SRC #01 Partners, LLP, a Colorado limited liability company. Defendant Top Rock Holdings, Inc., a Colorado corporation, is the general partner of SRC #01 Partners. Defendant Ralph Nagel, a resident of Colorado, controls Top Rock Holdings. This matter involves leased property (the "Property") of which defendant Seventy-Three Ninety-Three Partners, LLP ("7393 Partners"), is the tenant. 7393 Partners is a Colorado limited liability partnership managed by a separate corporation, Legan Holdings, Inc., which is controlled by defendant Ralph Nagel. The partnership of SRC #01 Partners was formed in 1979 for the purpose of acquiring rights

under a sublease (the "Sublease") from 7393 Partners and to provide equity for the construction of a building on the leased property for further sub-subleasing. SRC #01 Partners then entered into a sub-sublease (the "Sub-Sublease") with Clayton Racquetball Enterprises, Inc., which was later replaced by Vic Tanny International of Missouri, Inc. (now known as Bally Total Fitness of Missouri, Inc. ("Bally Total Fitness")).

In the instant cause of action, plaintiffs allege that in January 2003, the Sub-Sublease between SRC #01 Partners and Bally Total Fitness was amended, which had the effect of extending the term of the Sub-Sublease and increasing the amount of rent due thereunder. Plaintiffs allege that, although the original Sublease between SRC #01 Partners and 7393 Partners was not amended, nor did the January 2003 amendment to the Sub-Sublease affect the terms of the original Sublease, defendant Nagel nevertheless unilaterally implemented changes to the terms of the Sublease whereby an amount of rents due and owing to SRC #01 Partners under the Sublease was diverted to 7393 Partners. Plaintiffs allege that, as a result of this action, 7393 Partners has collected excess rental payments since 2003 in an amount exceeding $1 million to which it was not entitled under the Sublease. Correspondingly, plaintiffs allege that SRC #01 Partners has been deprived of over $1 million in rents due and owing it under the Sublease.

In their First Amended Complaint, plaintiffs bring claims of breach of fiduciary duty and unjust enrichment, and also seek a

declaratory judgment to properly allocate future rents according to the Sublease and Sub-Sublease. Plaintiffs also request an accounting to determine the nature of defendant Nagel's handling of the financial affairs of SRC #1 Partners.

Defendants now move to dismiss this action and compel arbitration, arguing that the Partnership Agreement entered into and existing between the parties contains a mandatory arbitration agreement encompassing plaintiffs' claims in this cause of action, thereby depriving this Court of subject matter jurisdiction over the claims. Defendants also contend that, to the extent plaintiffs argue that such claims are not subject to arbitration under the terms of the Partnership Agreement, the question of arbitrability itself is to be resolved by an arbitrator. For the following reasons, defendants' motion is well taken.

## I. Background

On July 19, 1979, the parties to this cause executed a Partnership Agreement ("Agreement") whereby the limited partnership of SRC #01 Partners was formed for the purpose of acquiring and holding the Sublease to the Property, to build improvements upon the Property, and to sub-sublease the Property and its improvements. (Defts.' Exh. A, Agreement at p. 2.) In accordance with the Agreement, the general partner of SRC #01 Partners, and signatory to the Agreement, was Ralph J. Nagel and Associates, Inc., the predecessor to Top Rock Holdings, Inc. The limited partners of SRC #01 Partners, and signatories to the Agreement,

included the plaintiffs here.

The terms of the Agreement provided for SRC #01 Partners to acquire the Sublease and to use financing and capital to develop the Property and construct improvements. The terms of the Agreement also provided authority to the general partner to, <u>inter alia</u>, authorize, negotiate, enter into, and execute leases in behalf of the Partnership. The Agreement also provided that the general partner would not be liable, responsible or accountable in damages or otherwise to any other partner, including limited partners, "for any acts performed by him within the scope of the authority conferred on him by this Agreement, except for acts of malfeasance or misfeasance." (Defts.' Exh. A, Agreement at p. 11.)

As arbitration clause is contained within the Agreement at Section 10.4:

> <u>Arbitration</u>: Any dispute or controversy arising under, out of, in connection with, or in relation to this Agreement, and any amendment thereof, or the breach thereof, or in connection with the formation, operation, or dissolution of the Partnership, shall be determined and settled by arbitration in St. Louis County, Missouri, in accordance with the Rules of the American Arbitration Association. . . . A decision of the arbitration will be a condition precedent to the commencement of litigation with respect to any such dispute or controversy.

(Defts.' Exh. A, Agreement at pp. 21-22.)

On July 1, 1979, the parties executed a Subscription Agreement which governed capital contingencies surrounding the

contemplated execution of the Sublease and Sub-Sublease at issue. The terms of the Subscription Agreement provided for the Partnership Agreement to be incorporated therein. (Defts.' Exh. A, Subscription Agreement at p. 1.)

On May 1, 1996, the parties entered into a Limited Liability Limited Partnership Agreement ("LLLP Agreement"), whereupon the Missouri partnership of SRC #01 Partners merged into a Colorado limited liability limited partnership, SRC #01 Partners, LLP. The general partner and limited partners of the two partnerships were the same. The merged partnership was known as SRC #01 Partners, LLP, and was governed under the terms of the LLLP Agreement. The purpose of the partnership remained, that is "to acquire and hold the Sublease, to build the Improvements and to sublease the Real Property and the Improvements." (Defts.' Exh. B, LLLP Agreement at p. 8.) The terms of the July 1979 Partnership Agreement were expressly incorporated into the LLLP Agreement to the extent such terms were not inconsistent with the LLLP Agreement. (Id. at p. 31.) Pursuant to the terms of the LLLP Agreement, the laws of the State of Colorado apply to the construction of the Agreement and to the rights and liabilities of the parties. (Id. at p. 30.)

**II. Discussion**

A. Choice of Law

As an initial matter, the undersigned notes plaintiffs to argue that the Federal Arbitration Act (FAA) is not applicable here

inasmuch as the Agreements at issue do not affect interstate commerce. Plaintiffs contend, therefore, that only State law applies to the arbitration clause in this case, and specifically Missouri law; and that, under Missouri law, the arbitration clause is unenforceable on its face.[1] Plaintiffs' claim is without merit.

The FAA provides that arbitration agreements in contracts involving interstate commerce are presumptively valid: "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2. The Supreme Court has interpreted the term "involving commerce" in the FAA as the functional equivalent of the more familiar term "affecting commerce" — a term which signals Congress's intent to invoke the broadest permissible exercise of its Commerce Clause power. <u>Citizens Bank v. Alafabco, Inc.</u>, 539 U.S. 52, 56 (2003). That broad power "may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice . . . subject to federal control . . . and that general practice . . . bear[s] on interstate commerce in a

---

[1] Other than arguing that the FAA does not apply to the arbitration clause, plaintiffs provide no argument as to why the State law to be applied is that of Missouri and not Colorado. The law of the State of Colorado was designated in the LLLP Agreement as the choice of law governing the Agreement.

substantial way." Id. at 56-57 (internal citations and quotation marks omitted).

Here, the activity in question affects interstate commerce to a sufficient degree as to bring the instant Agreements within the rubric of the FAA. First, the parties to the Agreements at issue are residents of different States. The purpose of the Agreements is to manage the Property located in the State of Missouri, with such management being directed by an entity in the State of Colorado, and with such Property being ultimately leased to a corporation headquartered in the State of Illinois.[2] In addition, millions of dollars in rental and other payments relating to the Property — which is the subject of the Agreements — have traversed interstate lines throughout the course of the Agreements. In sum, the Court has little trouble concluding that the interstate investment in property located in Missouri, owned by persons in Missouri and Colorado, managed by an entity in Colorado, leased to an entity headquartered in Illinois, and from which proceeds and profits are distributed to persons in Colorado and Missouri, involves interstate commerce. See Wolff v. Westwood Mgmt., LLC, 503 F. Supp. 2d 274, 280 (D.D.C. 2007). Therefore, to the extent plaintiffs contend that the FAA is not applicable to the arbitration clause at issue, such contention is without merit and

---

[2]The Sub-Sublease provides for all notices, requests, documents, and correspondence to be sent to tenant/lessee Bally Total Fitness at its Property Management Department and Office of General Counsel in Chicago, Illinois. (First Amd. Compl., Exh. 2 at pp. 2-3.)

should be denied.

B. <u>Arbitrability of Claims</u>

Plaintiffs argue that the claims raised in this cause of action are not subject to arbitration inasmuch as they sound in tort rather than in contract, and because such claims involve only the application of the Sublease and not the Partnership or LLLP Agreements. Defendants contend that the question as to whether the claims are subject to arbitration is itself a question to be resolved by an arbitrator. Upon careful consideration, the undersigned determines the parties to have clearly and unmistakably agreed that questions of arbitrability under the Agreements are to be determined by an arbitrator.

A court may not rule on the merits of any claim the parties have agreed to arbitrate. <u>St. Paul Fire & Marine Ins. Co. v. Courtney Enters., Inc.</u>, 270 F.3d 621, 624 (8th Cir. 2001) (citing <u>A T & T Tech. v. Communications Workers</u>, 475 U.S. 643, 649-50 (1986)); <u>General Drivers & Helpers Union, Local No. 554 v. Mid-Continent Bottlers, Inc. (Omaha Div.)</u>, 767 F.2d 482, 485 (8th Cir. 1985). However, in deciding whether to compel arbitration, the court must first determine whether the dispute is arbitrable, that is, within the scope of the agreement to arbitrate, "unless the parties have clearly agreed to leave that issue to the arbitrator." <u>St. Paul Fire</u>, 270 F.3d at 624.

Under the FAA, there is a general presumption that the issue of arbitrability should be resolved by the courts. <u>See</u> <u>First</u>

Options of Chicago, Inc. v. Kaplan, 514 U.S. 938, 944-46 (1995). Indeed, the question of arbitrability is for judicial determination *unless* the parties clearly and unmistakably provide otherwise. See Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 83 (2002). The incorporation of rules giving arbitrators the authority to determine their own jurisdiction is a clear and unmistakable expression of the parties' intent to reserve the question of arbitrability for the arbitrator and not the courts. Fallo v. High-Tech Inst., 559 F.3d 874, 878 (8th Cir. 2009).

Here, the arbitration clause of the 1979 Partnership Agreement (and incorporated into the LLLP Agreement) explicitly states that any arbitration shall be conducted "in accordance with the Rules of the American Arbitration Association." At the time the parties entered into the 1979 Partnership Agreement, and upon the incorporation of this Agreement into the LLLP Agreement in 1996, Rule 1 of the Rules of the American Arbitration Association provided: "These rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration or submission is received by the AAA. The parties by written agreement may vary the procedures set forth in these rules." The parties have presented nothing to the Court demonstrating that, by written agreement, they varied the procedures set forth in the AAA Rules. Rule 7(a) of the *current* AAA Rules provides that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the

existence, scope or validity of the arbitration agreement." Defendants argue that, by virtue of the incorporation of AAA Rule 1 when the Agreements were entered into, the *current* Rule 7(a) applies to this cause, and that therefore an arbitrator is to determine the arbitrability of the claims raised here.

Defendants' argument is persuasive. See Brandon, Jones, Sandall, Zeide, Kohn, Chalal & Musso, P.A. v. MedPartners, Inc., 203 F.R.D. 677, 684 (S.D. Fla. 2001); JSC Surgutneftegaz v. President & Fellows of Harvard Coll., 167 Fed. Appx. 266 (2d Cir. 2006); Congress Const. Co., Inc. v. Geer Woods, Inc., No. 3:05CV1665 (MRK), 2005 WL 3657933 (D. Conn. Dec. 29, 2005) (applying analogous AAA Construction Rules); see also Commonwealth Edison Co. v. Gulf Oil Corp., 541 F.2d 1263, 1273 (7th Cir. 1976). Plaintiffs' only response is to argue that the current Rule 7(a) does not apply here because the Partnership Agreement was formed in 1979, and its incorporation into the LLLP Agreement was in 1996, and that Rule 7(a) was not a part of the AAA Rules until 2000. This argument is without merit.

As set out above, Rule 1 of the AAA, which was operative in 1979 and in 1996 at the time the Partnership and LLLP Agreements were executed, states "[t]hese rules and any amendment of them shall apply in the form obtaining at the time the demand for arbitration or submission agreement is received by the AAA." If any of the parties wanted to carve out this provision from the arbitration clause so that it would not operate to validate any

subsequent amendments to the AAA Rules, they could have done so. Such was not done, however.  As such, by designating the AAA Rules in the arbitration clause, and not designating any alternate set of procedural rules or expressing any limitation on the applicability of Rule 1 which was in effect at the time of the execution of the Agreements, the parties contracted via a theory of incorporation that the current Rules of the AAA would govern arbitration matters at the time arbitration was demanded.  MedPartners, Inc., 203 F.R.D. at 684-85.  When parties incorporate the AAA Rules into their arbitration clause without exception, such incorporation includes Rule 1, which demonstrates the parties to have "clearly contracted to be bound by any amendments to the AAA Rules." Commonwealth Edison Co., 541 F.2d at 1273.  The AAA Rules, amended since 1979 and 1996, now include Rule 7(a) and provide the arbitrator with authority to determine his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.  Accordingly, the question of whether the claims raised in the instant litigation are arbitrable under the arbitration clause is one to be determined by an arbitrator and not this Court.

This clear and unmistakable intent of the parties is further demonstrated by additional and specific language contained in the arbitration clause itself:  "A decision of the arbitration will be a condition precedent to the commencement of litigation with respect to any such dispute or controversy."  (Defts.' Exh. A,

Agreement at pp. 21-22.) Because such language contemplates all questions to initially go to an arbitrator before court action is commenced, it necessarily follows that questions of arbitrability are to be first determined by an arbitrator.

C. <u>Disposition of Action</u>

Defendants request that in addition to compelled arbitration, the Court dismiss the action in its entirety inasmuch as all questions are to be determined by an arbitrator. As discussed above, however, an arbitrator is to first determine whether the claims raised in the instant cause of action are in fact subject to arbitration. Although the issue of arbitrability is one for the arbitrator to resolve, a finding in plaintiffs' favor as to this procedural issue could conceivably prompt the return of the parties to this Court to determine any non-arbitrable claims. Because there has not yet been a determination as to which forum is to consider the merits of plaintiffs' claims, it would be premature to say that all claims raised in the instant litigation will be determined by arbitration.

Nevertheless, a plain reading of the arbitration clause shows that the agreed-to condition precedent to litigation has not yet occurred, that is, there has been no arbitration decision to trigger the commencement of litigation. As such, the matter is not ripe for adjudication, thereby precluding the Court from maintaining jurisdiction over the cause. See <u>Dealer Computer Servs., Inc. v. Dub Herring Ford</u>, 547 F.3d 558, 560-61 (6th Cir.

2008). See also Wax'n Works v. City of St. Paul, 213 F.3d 1016, (8th Cir. 2000) (dismissal should be for lack of subject matter jurisdiction where case is not ripe for adjudication); Oil, Chem. & Atomic Workers Int'l Union, AFL-CIO v. Gillette Co., 905 F.2d 1176, 1177-78 (8th Cir. 1990) (federal court should not pass upon issues that are not ripe for review). As such, the matter, in its present posture, should be dismissed for lack of subject matter jurisdiction.

Accordingly, for all of the foregoing reasons,

**IT IS HEREBY ORDERED** that defendants' Joint Motion to Dismiss and Compel Arbitration (Doc. #10) is **GRANTED.**

**IT IS FURTHER ORDERED** that plaintiffs' First Amended Complaint is dismissed without prejudice.

*Frederick R. Buckles*
UNITED STATES MAGISTRATE JUDGE

Dated this  _20th_  day of April, 2011.